UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| TOMMY KEVIN STREVEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:14-CV-50 |
| | ) | (VARLAN/GUYTON) |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 16 & 17] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 18 & 19]. Plaintiff Tommy K. Strevel seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

On October 5, 2010, Plaintiff protectively filed a Title II and Title XVIII application and a supplemental Title XVI and XIX application with an alleged onset date of September 22, 2009. [Tr. 127-39; 157]. The Social Security Administration denied Plaintiff's application initially and upon reconsideration. [Tr. 82-85; 92-95]. Plaintiff timely filed a request for a hearing, and he appeared before Administrative Law Judge, James Dixon, on May 16, 2012 in Knoxville, Tennessee. [Tr. 97; 43]. The ALJ issued an unfavorable decision on June 21, 2012. [Tr. 20-42]. Plaintiff filed his appeal of the decision, which the Appeals Council declined to review on

December 20, 2013. [Tr. 7-13; 1-6].

Having exhausted his administrative remedies, Plaintiff filed a complaint with this Court on February 6, 2014, seeking judicial review of the Commissioner's final decision under Section 205(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## I.    ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.
>
> 2. The claimant has not engaged in substantial gainful activity since September 22, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: *chronic cervicalgia and lumbago secondary to degenerative arthritis; benign essential hypertension; borderline intellectual functioning; a dysthymic disorder; and a history of substance abuse* (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and/or carry up to 10 pounds *frequently* and from 11 to 20 pounds *occasionally* with no lifting or carrying of 21 pounds and over. He can sit for up to 4 hours at one time without interruption, and for up to 8 hours total in an 8-hour workday. He can stand and/or walk up to 2 hours at one time without interruption, and for up to 6 hours total out of an 8-hour workday. He is precluded from *any* overhead reaching with the bilateral upper extremities and more than *frequent* reaching in all other directions. He is precluded from more than *occasional* pushing or pulling with the bilateral upper extremities. He is able to *continuously* handle, finger, and feel

2

with the bilateral hands. He is able to operate foot controls on a *continuous* basis. He is precluded from *any* climbing of ladders or scaffolds, balancing, or crawling. He is precluded from more than *occasional* climbing of stairs and ramps, stooping, or crouching. He has no visual, communicative, or environmental limitations. He has the ability to understand, remember, and carry out 1- to 2-step tasks only. He can concentrate and persist for 2-hour time periods during an 8-hour workday with customary breaks within the restrictions applied above. He has the ability to interact appropriately with the general public, supervisors, and peers within the restrictions applied above. He can set limited goals and adapt to infrequent change with the restrictions applied above.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on March 14, 1964 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a marginal education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, since September 22, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 25-38] (emphasis in the original).

## II.     DISABILITY ELIGIBILITY

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability.

3

See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1.  If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3.  If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5.  Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. §

4

404.1520).  Plaintiff bears the burden of proof at the first four steps.  Walters, 127 F.3d at 529.

The burden shifts to the Commissioner at step five.  Id.  At the fifth step, the Commissioner must

prove that there is work available in the national economy that the claimant could perform.  Her

v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S.

137, 146 (1987)).

## III.  STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled

pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the

correct legal standards and whether the findings of the ALJ are supported by substantial

evidence."  Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v.

Callahan, 109 F.3d 270, 273 (6th Cir. 1997)).  If the ALJ applied the correct legal standards and

his findings are supported by substantial evidence in the record, his decision is conclusive and

must be affirmed.  Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C.

§ 405(g).  Substantial evidence is "more than a scintilla of evidence but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion."  Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)

(quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol.

Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a

different conclusion from that reached by the ALJ, or whether the reviewing judge may have

decided the case differently.  Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4

(6th Cir. 1986).  The substantial evidence standard is intended to create a "'"zone of choice'

within which the Commissioner can act, without the fear of court interference." Buxton v. Halter,

246 F.3d 762, 773 (6th Cir. 2001) (quoting <u>Mullen v. Bowen</u>, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo,* nor resolve conflicts in evidence, nor decide questions of credibility." <u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. <u>See Wilson v. Comm'r of Soc. Sec.</u>, 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." <u>Wilson</u>, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. <u>See Id.</u> at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. <u>Boyes v. Sec'y. of Health & Human Servs.</u>, 46 F.3d 510, 512 (6th Cir. 1994) (citing <u>Halsey v. Richardson</u>, 441 F.2d 1230 (6th Cir. 1971)).

## IV.   EVIDENCE

On October 5, 2010, Plaintiff protectively filed an application for Social Security benefits with an alleged onset date of September 22, 2009. [Tr. 127-39; 157]. Plaintiff has a seventh grade education, and he was forty-five years old at the time of his application. [Tr. 163;

6

157].  Plaintiff has past relevant work experience as a laborer, landscaper, and shipping clerk.

[Tr. 163].  He reported that he was laid off from his most recent job in January 2007.  [Tr. 163;

162].

### A.  Medical Evidence

#### 1.  Evidence regarding mental impairments

In support of his alleged mental deficiencies, Plaintiff submitted his academic records

reflecting a history of poor performance.  [Tr. 232-34].  These academic records show that

Plaintiff repeated two grades.  [Tr. 234].

Dr. Patricia Maffeo conducted a psychological evaluation on December 18, 2006 and

assessed Plaintiff with a full scale IQ score of 57.  [Tr. 268-71].  She noted that his IQ scores

"were in the extremely low range" and found that he was "significantly limited in functional

academic skills." [Tr. 271].  She diagnosed Plaintiff with borderline intellectual functioning and

"rule out mild mental retardation." [Id.].  Dr. Maffeo found that Plaintiff was capable of

managing his finances and Plaintiff's self-reported daily activities included driving, shopping,

preparing simple meals, helping his father build shelves, washing dishes, and doing laundry.  [Tr.

270].  In assessing his ability to understand and remember, Dr. Maffeo noted that this

"[i]mpairment is severe." [Tr. 271].

Dr. Kathryn R. Smith conducted an evaluation on January 25, 2011.  [Tr. 321-26].

Plaintiff stated that he repeated eighth grade and then dropped out of school during his ninth

grade year.  [Tr. 322].  His daily activities included household chores, hygiene and grooming,

simple meal preparation, laundry, hauling garbage to the dump, mowing the yard, shopping for

groceries, and "riding around" with a friend.  [Tr. 323-24].  Plaintiff had full scale Wechsler

Adult Intelligence IQ score of 57.  [Tr. 324].  Dr. Smith found that Plaintiff had a Global

Assessment of Functioning ("GAF") score of 55 and stated in her diagnosis that:

> Mr. Strevel seems to be experiencing dysthymic disorder. He has a history of alcohol abuse and opiate dependence which he reports to be in remission. In terms of his intelligence, the differential diagnosis seems to be between mild retardation and borderline intellectual functioning. For diagnosis of mental retardation, there must be documentation of evidence that he was in the mentally retarded range as a child and I do not have access to that information. I would lean towards borderline intelligence because adaptive functioning in many ways is in the borderline range. So he seems to have compensated fairly well for his cognitive limitations.

[Tr. 325]. Based on these findings, Dr. Smith assessed that Plaintiff was capable of performing simple, repetitive tasks with close supervision. [Tr. 326]. She found that his concentration was "limited [] as a function of low intelligence. Ability to interact was mildly to moderately limited. Ability to adapt to changes and requirements is moderately to severely limited. He had limited resources for solving problems or coping with difficulties." [Id.].

Robert de la Torre, licensed psychiatrist, submitted a psychiatric review on January 31, 2011. [Tr. 328-44]. He diagnosed Plaintiff with "[l]ow IQ with borderline functioning" and assessed that Plaintiff was mildly restricted in daily activities, moderately limited in maintaining social functioning, concentration, persistence, or pace, and had no episodes of decompensation. [Tr. 329; 338]. Dr. Torre explained that although Plaintiff had a history of "learning problems and low IQ scores, he has been able to sustain employment for extended periods without special supervision, and is capable of driving and making purchases/managing money independently. Work [history] and [activities of daily living] suggest borderline functional capacity." [Tr. 340].

### 2. Evidence regarding physical impairments

Plaintiff testified that he suffered from chronic numbness in his knees, back, and hands and stated that he had two surgeries on his neck. [Tr. 55-58]. Plaintiff received treatment at

8

Cherokee Health Systems off and on from March 2009 through January 2012 for various ailments including anxiety, depression, chronic pain, headaches, and hypertension. [See Tr. 276-77; 348-53; 358-406]. He was diagnosed with mood disorder, rule out alcohol dependence, rule out adjustment disorder with anxiety, rule out mild mental retardation, and history of a fractured spine. [Tr. 359; 370; 373; 379; 381]. He was noted to have a history of alcohol abuse and reported alcohol consumption "2-3 times per week with excessive amounts." [Tr. 381].

Dr. Jeffrey Summers submitted a Medical Source Statement regarding Plaintiff's ability to physically complete work-related activities on December 10, 2010. [Tr. 297-309]. He noted Plaintiff's chronic back and neck pain and found he could frequently lift and carry up to 10 pounds, could occasionally lift and carry up to 20 pounds, and could never lift or carry more than 21 pounds. [Tr. 297]. Dr. Summers assessed that Plaintiff could sit for up to four hours and stand or walk for up to 2 hours in an 8-hour workday. [Tr. 298]. He further found that Plaintiff could continuously handle, finger, and feel, could occasionally push, pull, and reach, and could never reach overhead. [Tr. 299]. Dr. Summers also reviewed lumbar spine x-rays and found that there was "normal vertebral body alignment" with "moderate sized anterior and lateral osteophytes present at multiple levels suggestive of moderate osteoarthritis." [Tr. 305]. He noted that the "sacroiliac joints demonstrate mild reactive sclerosis." [Id.]. During his examination, Dr. Summers found that Plaintiff was "alert and oriented to person, place, time, and situation. Cognitive function and intelligence are appropriate for his degree of formal education." [Tr. 308]. In summary, Dr. Summers noted that Plaintiff was "applying for disability benefits due to 'problems with my neck, my back, chest pain, and poor hearing.'" [Id.]. However, the only impairment confirmed by Dr. Summers was a "decrease in range of motion at his cervical and lumbar spine areas." [Tr. 309].

9

Dr. Louis Patikas submitted a physical RFC assessment on December 28, 2010. [Tr. 310-18]. He found that Plaintiff could frequently lift and carry up to 10 pounds, could occasionally lift and carry up 20 pounds, and could stand, walk, or sit for up to 6 hours in an 8-hour workday. [Tr. 311]. Dr. Patikas assessed that Plaintiff could frequently climb, balance, stoop, kneel, crouch, and crawl. [Tr. 312]. In conclusion, Dr. Patikas affirmed that Plaintiff's cervical history "could cause pain and functional limitations" and that Plaintiff exhibited "some limitations" in his range of motion of both the cervical and lumbar spine. [Tr. 217].

### B. Other Evidence

The ALJ conducted a hearing on May 16, 2012, in which the Plaintiff and Vocational Expert, Katharine Bradford, testified. [Tr. 43-75]. The ALJ issued an unfavorable decision on June 21, 2012. [Tr. 20-42]. The ALJ found that Plaintiff's mental impairments did not satisfy 20 C.F.R. § 404, Subpart P, Appendix 1 ("the Listings"), and specifically considered whether his mental impairments resulted in limitations in activities of daily living, social functioning, and concentration, persistence, or pace and whether Plaintiff had experienced periods of decompensation. [Tr. 26]. The ALJ also considered whether Plaintiff satisfied Listing 12.05 and found that Plaintiff's educational records were not demonstrative of deficits in adaptive functioning manifested prior to the age of 22. [Tr. 28].

## V. POSITIONS OF THE PARTIES

The Plaintiff claims that the ALJ erred in finding he did not meet Listings 12.05B or 12.05C. Plaintiff argues that the ALJ did not properly consider his educational records in determining whether he met the diagnostic description in Listing 12.05 and that such an error was not harmless. Plaintiff also contends that the Commissioner's failure to supply his school records to Dr. Smith was in error and that the ALJ improperly considered Plaintiff's past work in

10

assessing his cognitive abilities. Further, Plaintiff contends that the ALJ erred in his RFC determination. Specifically, Plaintiff argues that the ALJ misinterpreted and improperly discounted Dr. Maffeo's analysis. Plaintiff claims that the ALJ's credibility analysis is also flawed because he failed to fully consider the records of the state agency examiners. Finally, Plaintiff contends that the ALJ failed to explain why he did not accept Dr. Summers's full assessment, and that such rejection specifically influenced the outcome of the ALJ's disability analysis at step five.

The Commissioner responds that the ALJ properly concluded that Plaintiff's impairments do not satisfy Listing 12.05. The Commissioner contends that the ALJ reasonably concluded that Plaintiff's educational records did not satisfy the diagnostic description of 12.05 and that the ALJ appropriately weighed the evidence in determining that Plaintiff's cognitive functioning did not satisfy a listed impairment. The Commissioner further responds that the ALJ's RFC assessment is supported by substantial evidence and that he properly weighed the medical evidence in determining Plaintiff's credibility. Specifically, the Commissioner argues that the ALJ properly considered and interpreted Dr. Maffeo's records. Finally, the Commissioner argues that the ALJ's determination that work existed in the national economy which Plaintiff could perform was based on substantial evidence.

## VI.    ANALYSIS

The Court will address each of the issues presented by Plaintiff in turn.

## A.  Listing 12.05

The Court finds that the ALJ's determination that Plaintiff's mental impairments do not satisfy Listing 12.05 is based on substantial evidence. Generally, a claimant can establish disability by demonstrating all of the medical findings listed for an impairment. 20 C.F.R. §

11

404.1525(c)(3). "If a claimant does not have one of the findings, however, [he or] she can present evidence of some medical equivalent to that finding." Bailey v. Comm. Soc. Sec., 413 F. App'x 853, 854 (6th Cir. Mar. 11, 2011) (citing C.F.R. §§ 404.1525 & 404.1526). To demonstrate such a medical equivalent, the claimant must present "medical findings equal in severity to *all* the criteria for the one most similar listed impairment." Sullivan v. Zebley, 493 U.S. 521, 531 (1990) (emphasis in original). The claimant has the burden of establishing that his impairment meets or equals a listed impairment. Walters, 127 F.3d at 529.

In relevant part, Listing 12.05 provides the following:

> 12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . .
>
> B. A valid verbal, performance, or full scale IQ of 59 or less;
>
> OR
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work related limitation of function[.]

20 C.F.R. § 404, Subpart P, App. 1.

Thus, to meet or equal Listing 12.05, a claimant's impairment must satisfy "the diagnostic description in the introductory paragraph *and* any one of the four sets of criteria." Id. (12.00A) (emphasis added). In order to satisfy the diagnostic description, "a claimant must demonstrate three factors: (1) subaverage intellectual functioning; (2) onset before age twenty-

12

two; and (3) adaptive-skills limitations.  Hayes v. Comm'r of Soc. Sec., 357 F. App'x 672, 675 (6th Cir. 2009).

The Court will address these factors in turn.

### 1. 12.05 diagnostic description

The Plaintiff contends that his academic records and standardized test scores are demonstrative of subaverage intellectual functioning during his developmental period, i.e., before the age of 22.  The ALJ disagreed, and the Court finds that his determination is supported by substantial evidence.

The ALJ specifically considered Plaintiff's mental impairments under Listing 12.05 and found that Plaintiff failed to demonstrate subaverage intellectual functioning before the age of 22.  [Tr. 28].  The ALJ explained that the "fact that the claimant repeated a couple of grades and generally earned poor grades in school is certainly not definitive evidence of 'mental retardation.'" [Id.].  In regards to Plaintiff's standardized test scores, the ALJ reasoned that "allegedly poor performance on now obsolete standardized tests in comparison to other students *nationwide* is also not convincing evidence of 'subaverage general intellectual functioning.'" [Id.] (emphasis in the original).  Accordingly, the ALJ found that the Plaintiff failed to meet the diagnostic criteria of 12.05 and "that further analysis of the criteriae in paragraphs A, B, and C is unnecessary[.]" [Id.].

The Court concurs in this assessment.  The Court takes Plaintiff's academic records into consideration and notes that, although he made poor marks, repeated two classes, and allegedly scored poorly on standardized tests, Plaintiff's grades fail to reflect a lack of "functional academic skills."  See Hayes, 357 F. App'x at 677 ("this Court has never held that poor academic performance, in and of itself, is sufficient to warrant a finding of onset of subaverage intellectual

13

functioning before age twenty-two."). The Plaintiff points the Court to case law to prove that his academic records are demonstrative of subaverage intellectual functioning, yet the Court is not so convinced. In this case, the Plaintiff's academic records consist of three scant pages, two of which contain achievement scores that this Court cannot and will not attempt to decipher, especially as they are absent any comparative averages or information explaining the results of the test scores. [See Tr. 232-33].

The last page contains Plaintiff's grade sheet from ages six to fifteen. [Tr. 234]. The Court notes that the Plaintiff had only nine failing grades over a span of ten years and had over 70 passing grades, at least 40 of which were B's and C's. [See id.]. Further, the Court considers Plaintiff's attendance record, which was fairly poor, showing that he missed on average 20 days each school year. [See id.]; see also Courter v. Comm'r of Soc. Sec., 479 F. App'x 713, 724 (6th Cir. 2012) (explaining that courts have "found that 'school records do not necessarily show that a claimant had intellectual deficiencies' where, 'instead, the records support the conclusion that the claimant had poor school attendance and a troubled home life.'") (quoting Hayes, 357 F. App'x at 676). The Court finds it noteworthy that in the three years that Plaintiff missed less than twenty days he did not receive a single failing grade. [See Tr. 234].

Further, even if the ALJ erred in considering Plaintiff's academic records, the Plaintiff still fails to pass the 12.05 threshold because the ALJ found that he was not limited in adaptive skills. [See Tr. 26-28]. An adaptive skills evaluation consists of inquiry into such areas as communication, social interaction, and activities of daily living. See Hayes, 357 F. App'x at 677. The Sixth Circuit relies on the American Psychiatric Association definition of adaptive skills limitations, which includes "'concurrent deficits or impairments . . . in at least two of the following areas: communication, self-care, home living, social/interpersonal skills, use of

14

community resources, self-direction, functional academic skills, work, leisure, health, and safety."' Id. (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders Text Revision, § 317 at 49 (4th ed. 2000)). Here, the ALJ did not find marked impairments in Plaintiff's activities of daily living, social functioning, or concentration, persistence or pace. [Tr. 27]. The ALJ noted the Plaintiff's ability to care for his personal hygiene, perform household chores such as sweeping and vacuuming, prepare food, wash clothes, handle his money, and pay bills. [Tr. 26]. He further considered Plaintiff's ability to interact socially, noting his relationship with his ex-wife/girlfriend and his "appropriate interaction with others within expected social, developmental, and cultural norms." [Id.]. The ALJ also took Plaintiff's work history into account, reasoning that if Plaintiff "has been mentally retarded since childhood (and thus prior to the alleged onset date of disability), the fact that he has worked in the past with this condition, *at times well above SGA levels*, strongly suggests that this impairment would not currently prevent work." [Id.] (emphasis in the original).

The Court finds that the record substantiates the ALJ's findings and demonstrates that Plaintiff's adaptive functioning was not severely limited. [See Tr. 323-24] (Plaintiff's self-reported daily activities included household chores, hygiene and grooming, simple meal preparation, laundry, hauling garbage to the dump, mowing the yard, shopping for groceries, and "riding around" with a friend); [Tr. 325] (Dr. Smith finding that she would "lean towards borderline intelligence because adaptive functioning in many ways is in the borderline range. So he seems to have compensated fairly well for his cognitive limitations."); [Tr. 340] (Dr. de la Torre explaining that although Plaintiff had a history of "learning problems and low IQ scores, he has been able to sustain employment for extended periods without special supervision, and is

15

capable of driving and making purchases/managing money independently. Work [history] and [activities of daily living] suggest borderline functional capacity.").

Therefore, the Court finds that substantial evidence supports the ALJ's determination that Plaintiff does not meet the 12.05 diagnostic description, and specifically, that Plaintiff failed to demonstrate "(1) subaverage intellectual functioning; (2) onset before age twenty-two; and (3) adaptive-skills limitations." Hayes, 357 F. App'x at 675.

### 2. Criteria to meet 12.05B & C

Because the Court finds that Plaintiff failed to meet the diagnostic description of Listing 12.05, any argument that he satisfies Listings 12.05B or 12.05C is moot.

### 3. Dr. Smith's psychological evaluation

Plaintiff contends that the ALJ committed harmful error in considering Dr. Smith's analysis when she did not have access to Plaintiff's academic records. The Court disagrees. Pursuant to Social Security Ruling 96-6P, and ALJ must obtain an updated medical opinion from a medical expert "[w]hen additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." 1996 WL 374180, at *3-4 (S.S.A. July 2, 1996). Therefore, in a case such as this, a claimant "must demonstrate either that the school records suggest that [the claimant] qualified as mentally retarded under Section 12.05 or that the ALJ believed the school records may have changed the experts' findings." Courter v. Comm'r of Soc. Sec., 479 F. App'x 713, 723 (6th Cir. 2012).

Here, Plaintiff has failed to meet that burden. The ALJ specifically addressed Dr. Smith's opinion and Plaintiff's allegations of insufficiency. [See Tr. 32-33]. The ALJ included

Dr. Smith's diagnosis "that 'there must be documentation of evidence that the claimant was in the mentally retarded range as a child,' noting that she had no such evidence. She ultimately 'leaned towards borderline intelligence,' noting that the claimant's 'adaptive functioning in many ways is in the borderline range.'" [Tr. 32] (quoting Tr. 325). The ALJ went on to address Plaintiff's claim that Dr. Smith's opinion would have been swayed by his academic records, finding this argument unpersuasive. [See id.]. The ALJ noted that the "mere fact that the claimant repeated two grades and generally made bad grades in school is not necessarily demonstrative of 'mental retardation.'" [Tr. 32-33]. The ALJ further explained that Plaintiff's poor test scores were similarly unpersuasive of mental retardation and found that "the undersigned does not agree that Dr. Smith's failure to receive or review this record is significant[.]" [Tr. 33].

The Court concurs and finds that the ALJ properly adhered to agency protocol in his consideration of Dr. Smith's opinion. As explained above, the need to obtain an updated medical opinion is only triggered once the *ALJ or Appeals Council* finds that new evidence might change the medical expert opinion. See S.S.A. 96-6P, 1996 WL 374180, at *3-4 (emphasis added). It is not the opinion of the Court or the Plaintiff that is relevant, but only that of the ALJ. The Court has already established that the ALJ's determination that Plaintiff's academic records do not satisfy 12.05 is based on substantial evidence, and the Court finds that the ALJ's assessment that Dr. Smith would be similarly unimpressed is further supported by substantial evidence. Although Dr. Smith references her lack of academic records, she explicitly stated that she would require "evidence that he was in the mentally retarded range as a child" for a diagnosis of mental retardation. [Tr. 325]. Plaintiff's academic records fail to constitute such proof. Therefore, the

17

Court finds that failure to provide Dr. Smith with Plaintiff's academic records was harmless error.

### 3. Consideration of Plaintiff's work history

Although Plaintiff takes issue with the ALJ's reliance on his work history, the Court is not similarly offended. The ALJ and Plaintiff disagree on the interpretation of <u>Maresh v. Barnhart</u>, 438 F.3d 897 (8th Cir. 2006), yet any debate in this regard is moot. The court in <u>Maresh</u> found that the plaintiff's work history could not be used against her in determining whether she met the second prong of 12.05C. The court explained that "'the issue is not whether the claimant can perform gainful activity; rather, it is whether he has an . . . impairment, other than his conceded mental impairment, which provides significant work-related limited function—in other words, whether the second prong of § 12.05(C) is met.'" <u>Maresh</u>, 438 F.3d at 901 (quoting <u>Sird v. Chater</u>, 105 F.3d 401, 403 (8th Cir. 1997)). In that case, the plaintiff satisfied the diagnostic criteria of Listing 12.05, and the only question that remained was whether he met the second prong of 12.05C, namely "a physical or other mental impairment imposing an additional and significant work related limitation of function[.]" 20 C.F.R. § 404, Subpart P, App. 1.

Here, the Court has already found the ALJ's determination that Plaintiff failed to meet the diagnostic threshold of 12.05 was based on substantial evidence, and therefore, any analysis under 12.05C is moot. The ALJ was well within agency standards to consider Plaintiff's work history in both his consideration of the 12.05 diagnostic description and his RFC determination. <u>See</u> Am. Psychiatric Ass'n, <u>Diagnostic and Statistical Manual of Mental Disorders Text Revision</u>, § 317 at 49 (defining adaptive limitations as "concurrent deficits or impairments . . . in at least two of the following areas: communication, self-care, home living, social/interpersonal

18

skills, use of community resources, self-direction, functional academic skills, *work*, leisure, health, and safety.") (emphasis added).

Accordingly, Plaintiff's argument in this regard is not well taken.

### 4. Dr. Maffeo's examination report

The Plaintiff contends that the ALJ erred in his assessment of Dr. Maffeo's opinion. Specifically, Plaintiff takes issue with the ALJ's interpretation of Dr. Maffeo's use of the term "severe" in regards to impairments in Plaintiff's ability to understand and remember and sustain concentration, persistence, and pace. [See Doc. 17 at 18-19; Tr. 31; Tr. 271]. The Court declines to engage in a debate regarding Dr. Maffeo's language and her intended meanings. Further, any dispute regarding Dr. Maffeo's intended meaning of the term "severe" is immaterial, as the ALJ provided reasons for discounting a finding of marked limitations in Plaintiff's ability to understand and remember and sustain concentration, persistence, and pace regardless of her intended use of the term "severe." [See Tr. 32] (explaining that Plaintiff's performance during Dr. Maffeo's exam and his self-reported daily activities were inconsistent with a finding of marked limitations).

The Court finds Plaintiff's argument in regard to the ALJ's consideration of Dr. Maffeo's opinion to be without merit. Primarily, Dr. Maffeo's examination predates the alleged onset date by more than three years. Therefore, it is doubtful that the ALJ was under an obligation to give her opinion any consideration. See Davis ex rel. Smith v. Comm'r of Soc. Sec., No. 1:08-CV-00291, 2009 WL 2884142, at *10 (S.D. Ohio Sept. 1, 2009) (finding that a physician's opinion "that occurred nine months prior to the alleged onset date . . . was not relevant to assessing

19

Plaintiff's disability claim.").[1]  Further, there is a wealth evidence to support the ALJ's findings at both step three and four, regardless of the weight assigned to Dr. Maffeo.  As explained above, the record supports the ALJ's finding at step three, and it similarly provides substantial evidence for the ALJ's RFC determination.  The ALJ based his RFC analysis on the medical evidence as a whole, Plaintiff's daily activities, work history, medications, treatment history, and alcohol and opiate abuse.  [See Tr. 28-36].  Regardless of Dr. Maffeo's opinion, the record as a whole supports the ALJ's determination.  Not only does the evidence support the ALJ's RFC assessment, the ALJ thoroughly explained his analysis, the weight assigned Dr. Maffeo, and the reasons for that weight.  The agency requires no more and neither shall this Court.  See Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *2 (an ALJ's credibility assessment "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").  Accordingly, the Court finds that the weight assigned to Dr. Maffeo is based on substantial evidence and any argument to the contrary is meritless.

**B.  Assessing Plaintiff's Credibility**

Plaintiff argues that the ALJ erred in his credibility assessment by failing to give proper consideration to the opinions of the state agency consultants.  The Court disagrees.  An ALJ may consider the claimant's credibility when determining the basis of pain symptoms.  See Walters,

---

[1] The Court notes that not all medical evidence obtained prior the alleged onset date is "necessarily irrelevant." See DeBoard v. Comm'r of Soc. Sec., 211 F. App'x 411, 414 (6th Cir. 2006) ("We recognize that evidence presented at an earlier hearing or predating the onset of disability, when evaluated *in combination with later evidence,* may help establish disability.") (emphasis in the original). However, courts have found such evidence irrelevant when the records substantially outdated the alleged onset date. See 20 C.F.R. § 404.1512 (d)(2) ("By 'complete medical history,' we mean the records of your medical source(s) covering at least the 12 months preceding the month in which you file your application.").

20

127 F.3d at 531 (explaining that "[i]n evaluating complaints of pain, an ALJ may properly consider the credibility of the claimant."). The ALJ's findings regarding credibility "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." Id. However, the ALJ's finding must be supported by substantial evidence. Id. Our appellate court has articulated the standard for evaluating subjective complaints as follows:

> First, we examine whether there is objective medical evidence in an underlying medical condition. If there is, we then examine (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Sec. of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986).

In deciding whether the objective evidence confirms the severity of the alleged pain or whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain, the ALJ must consider the following factors: (i) daily activities; (ii) the location, frequency, and intensity of the pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (v) treatment, other than medication, received or implemented for relief of pain or other symptoms; (vi) any other measures besides medical treatment that are used or were used to relieve pain or other symptoms; (vii) other factors concerning functional limitations and restrictions due to pain or other symptoms. Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *3 (S.S.A. July 2, 1996); 20 C.F.R. § 404.1529(c)(3). Although the ALJ is not required to address every factor, his "decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be

sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *3.

The Sixth Circuit has emphasized that "[t]his is a highly deferential standard. As a result, substantial evidence review 'gives the agency the benefit of the doubt, since it requires not the degree of evidence which satisfies the *court* that the requisite fact exists, but merely the degree which *could* satisfy a reasonable fact finder.'" Claiborne-Hughes Health Ctr. v. Sebelius, 609 F.3d 839, 843-44 (6th Cir. 2010) (quoting Allentown Mack Sales & Serv., Inc. v. NLRB, 522 U.S. 359, 377 (1998) (emphasis in the original)).

Here, the ALJ found that although the Plaintiff's impairments could cause *"some* of the alleged symptoms . . . statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." [Tr. 29]. The ALJ then walked through the Plaintiff's physical and mental impairments, specifically considering the opinions and records of Dr. Summers, Dr. Maffeo, Dr. Smith, Dr. de la Torre, and "the physicians employed by the State Disabilty Determination Services[.]" [Tr. 29-36]. The ALJ further considered Plaintiff's daily activities, lack of extensive medical care, opiate and alcohol abuse, appearance and demeanor at the hearing, and Plaintiff's choice to "use his allegedly-limited financial resources to buy alcohol rather than to pay for medical treatment, such as a $4 co-pay for lisinopril[.]" [Id.]. The ALJ reasoned that "[o]ne would expect that if the claimant's impairments were as limiting as he has alleged, that he would use the money he spends on alcohol to instead pay for his allegedly-unaffordable medical care. The undersigned finds such autonomous behavior to be inconsistent with the deliberation of a truly disabled individual." [Tr. 35].

Based on this analysis, the Court finds that the ALJ's credibility assessment is supported by substantial evidence and adheres to the standard set forth in Social Security Ruling 96-7p. See Tyra v. Soc. Sec. Admin., 896 F.2d 1024, 1030 (6th Cir. 1990) (explaining that "the ALJ may dismiss a claimant's allegations of disabling symptomatology as implausible if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict" the alleged severity of symptoms). In Tyra, the Sixth Circuit found that the plaintiff's subjective complaints were properly dismissed "because the medical and testimonial evidence failed to confirm the severity of the pain." Id. The ALJ made similar findings here and the Court is equally persuaded. It matters not that the ALJ declined to specifically address each statement of credibility in each examination report. The ALJ is under no such obligation. See Loral Def. Sys.-Akron v. N.L.R.B., 200 F.3d 436, 453 (6th Cir. 1999) ("the fact that the ALJ's opinion failed to discuss all of the testimony and evidence presented to him does not mean that the ALJ 'failed to consider' the evidence.") (quoting NLRB v. Beverly Enterprises-Massachusetts, 174 F.3d 13 (1st Cir. 1999)).

Not only is there no obligation to specifically address each piece of evidence, the ALJ is not beholden to the opinions of non-treating physicians. See 20 C.F.R. § 404.1527(e)(2)(i) (in considering non-treating physician opinions, an ALJ is "not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists"). Non-treating physicians are to be considered as "opinion evidence" and the ALJ shall evaluate a consultative physician's opinion using the relevant factors in 20 C.F.R. § 404.1527(c)(2-6), the same factors used to analyze the opinion of a treating physician. See 20 C.F.R. § 404.1527(e)(2)(iii); Jericol Mining, Inc. v. Napier, 301 F.3d 703, 710 (6th Cir. 2002) ("We believe that the same factors that justify placing greater weight on the opinions of a

23

treating physician are appropriate considerations in determining the weight to be given an examining physician's views."); <u>Sommer v. Astrue</u>, No. 3:10-CV-99, 2010 WL 5883653, at *6 (E.D. Tenn. Dec. 17, 2010) (citation omitted) ("The Regulations and Rulings require an ALJ, in the absence of a treating source who enjoys controlling weight, to weigh the opinions of one-time examining physicians and record-reviewing physicians under the regulatory factors, including supportability and consistency.") (citing 20 C.F.R. § 404.1527(d) & (f)); <u>see also</u> 20 C.F.R. §§ 404.1527(c)(2-6) and 416.927(c)(2-6) (the appropriate weight to be given an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion).

The Court finds that the ALJ properly adhered to agency procedure and considered the factors set forth in 20 C.F.R. § 404.1527(c)(2-6). Specifically, the ALJ weighed Plaintiff's treatment records, treatment relationship, the consistency and supportability of the physician opinions with the record, along with other factors such as Plaintiff's daily activities and opiate and alcohol abuse. [<u>See</u> Tr. 29-36]. The Court finds that the ALJ's analysis was thorough, detailed, and consistent with agency requirements. <u>See</u> Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *2 (an ALJ's credibility assessment "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."). In this case, the ALJ has met that burden. It is clear from his decision that the ALJ weighed the evidence in its entirety in determining that the alleged severity of Plaintiff's symptoms was not credible. Therefore, the Court finds that the ALJ's determination of credibility is based on substantial evidence and shall be upheld.

24

**D. Consideration of Dr. Summers's Opinion**

The Plaintiff argues that the ALJ erred in not explaining why he declined to adopt all of Dr. Summers's restrictions. The Court finds this argument to be without merit and inconsistent with agency requirements. As stated above, an ALJ is under no obligation to address each piece of evidence. See Loral Def. Sys.-Akron, 200 F.3d at 453. Neither is the ALJ bound by non-treating physician opinions, nor must he address every aspect of an opinion or report. See 20 C.F.R. § 404.1527(e)(2)(i). As explained above, the ALJ's decision "must be sufficiently specific" so as to provide meaningful review. See Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *2. The ALJ clearly met that burden in considering Dr. Summers's opinion. He spent two and half pages discussing Dr. Summers's opinion and the basis for the ALJ's RFC determination is clearly reflected in his decision. [See Tr. 29-31].

Plaintiff takes issues with the ALJ's statement: "[w]hile Dr. Summers assessed that the claimant was precluded from more than *occasional* overhead reaching in all other directions with the bilateral upper extremities, this portion of the assessment is too restrictive in light of the record as a whole and has been adjusted accordingly." [Tr. 30] (emphasis in the original), and argues that "the regulations require the ALJ to provide a reasoned explanation for the ALJ's adoption of Dr. Summers restrictions with that sole exception." [Doc. 17 at 22]. The Plaintiff fails to cite any case law or agency regulation supporting this statement, and the Court is unclear as to the basis for the Plaintiff's alleged rule. As explained above, the law and agency regulations are quite to the contrary. See Loral Def. Sys.-Akron, 200 F.3d at 453; 20 C.F.R. § 404.1527(e)(2)(i).

Regardless of the validity of Plaintiff's statement, the ALJ complied with the Plaintiff's request. The ALJ explained that he declined to adopt a portion of Dr. Summers's assessment

25

because it was inconsistent with the record. [Doc. 30]. In the ALJ's RFC determination, he discussed the record in its entirety, including Plaintiff's treatment records, daily activities, substance abuse, history of prescription medication, employment history, and the opinions of the non-treating physicians, providing specific reasons for his RFC determination. [See Tr. 26-36]. The Plaintiff is troubled that the appellate court will be unable to conduct a "meaningful review" of the ALJ's decision, [Doc. 17 at 22], but the Court is not so concerned. The ALJ provided a thorough and detailed opinion that is "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *2. The Court finds that substantial evidence supports the ALJ's assessment of Dr. Summers's opinion, RFC determination, and conclusion at step five that "there are jobs that exist in significant numbers in the national economy that the claimant can perform[.]"

## VII. CONCLUSION

Based upon the foregoing, it is hereby **RECOMMENDED**[2] that Plaintiff's Motion For Summary Judgment **[Doc. 16]** be **DENIED**, and that the Commissioner's Motion for Summary Judgment **[Doc. 18]** be **GRANTED.**

Respectfully submitted,

United States Magistrate Judge

---

[2] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).